1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

7

INVEST VEGAS, LLC,

8

Plaintiff(s),

9

v.

10

21ST MORTGAGE CORPORATION, et al.,

11

Defendant(s).

Case No. 2:15-CV-644 JCM (VCF)

ORDER

12
13

Presently before the court is plaintiff Invest Vegas, LLC's ("Invest Vegas") motion to

14

remand to state court for lack of subject matter jurisdiction. (Doc. # 8). Defendant 21st Mortgage

15

Corporation ("21st Mortgage") filed a response, and plaintiff filed a reply. (Docs. ## 10, 11).

16

**I.    Background**

17

Plaintiff filed its complaint in Nevada state court to quiet title against 21st Mortgage and

18

other defendants on January 14, 2015. (*See* Doc. # 1 at 19). The subject real estate is located at and

19

known as 230 E. Flamingo Rd., # 301, Las Vegas, NV 89169 (the "subject property"). 21st

20

Mortgage is the current holder of the promissory note (the "note") and the respective first position

21

deed of trust for the subject property (the "deed of trust").

22

Invest Vegas is the owner of a quit claim deed (the "HOA deed") that purports to grant

23

ownership of the subject property to Invest Vegas free and clear of 21st Mortgage's deed of trust.

24

Invest Vegas alleges that it acquired title from a former owner, Ryanik Las Vegas Holdings, LLC

25

("Ryanik"). Ryanik allegedly obtained title via quit claim deed from the Meridian Private

26

Residences Homeowners Association (the "HOA"). The HOA obtained its title through a

27

foreclosure sale (the "HOA sale") arising from delinquent assessments owed to the HOA from the

28

property's former owners. The HOA sale was conducted pursuant to NRS 116.31162, NRS

James C. Mahan
U.S. District Judge

1    116.31163, and NRS 116.31164. The sale occurred on November 14, 2012, and was recorded with

2    the Clark County Recorder's office on December 19, 2012. (*See* Doc. # 8-1 at 1).

3         21st Mortgage alleges that it lawfully obtained all right and title to the *allegedly valid* deed

4    of trust, as well as the respective promissory note, from a purchase and sale agreement executed

5    in connection with and subject to a bankruptcy case pending at the time of the HOA sale. (*See*

6    Doc. # 10 at 3). It indicates that it acquired the note and deed of trust pursuant to an approved

7    bankruptcy sale order (the "bankruptcy sale") under §§ 105, 363, and 365 of Title 11 of the U.S.

8    Code ("Title 11") in the case of *In re: Residential Capital, LLC, et.al.,* Case No. 12-12020(MG).

9    11 U.S.C. §§ 105, 363, 365; s*ee also* Aff. Of Chris Caldwell Esq. at ¶ 5 (doc. # 10 at 10). The order

10   and related purchase and sale agreement are both dated November 21, 2012. (Doc. # 10-3 at 2,

11   35).

12        21st Mortgage further contends that the HOA sale was held in violation of Title 11's

13   automatic stay provision because the HOA sale occurred before the bankruptcy sale. *See* 11 U.S.C.

14   § 362; doc. # 8-1 at 1; doc. # 13-3 at 2. The automatic stay provision protects property of the

15   debtor's estate from most legal or equitable claims, actions, or acts against it. *See* 11 U.S.C. § 362.

16        Invest Vegas contends that 21st Mortgage has failed to show that the subject property was

17   ever part of the bankruptcy estate in the *Residential Capital* case. Therefore, the HOA sale was

18   valid and binding, extinguishing any right or claim evidenced by the note or the deed of trust. 21st

19   Mortgage counters that the promissory note and deed of trust for the subject property were part of

20   the bankruptcy estate in the *Residential Capital* case. It claims that the deed of trust and promissory

21   note, taken together as a security interest in the subject property, were subject to the automatic

22   stay. It further argues that an HOA foreclosure sale that extinguishes the security interest is in

23   violation of that stay.

24        Defendant 21st Mortgage filed an amended petition for removal with this court on April

25   22, 2015. (Doc. # 4). Plaintiff Invest Vegas filed the instant motion to remand to state court on

26   May 19, 2015. (Doc. # 8).

27   **II.   Legal Standards**

28        Under 28 U.S.C. § 1441, "any civil action brought in a [s]tate court of which the district

**James C. Mahan**
**U.S. District Judge**

- 2 -

courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

Removal of a case to a United States district court may be challenged by motion. 28 U.S.C. § 1441(c). A federal court must remand a matter if there is a lack of jurisdiction. *See Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 988 (D. Nev. 2005). Removal statutes are construed restrictively and in favor of remanding a case to state court. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing that removal was proper by a preponderance of evidence." *Knutson* at 988 (citing *Gaus*, 980 F.2d at 567; *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996)).

An action filed in state court may be removed to federal court only if the federal court would have had original subject matter jurisdiction over the action. 28 U.S.C. § 1441(a). This court has original subject matter jurisdiction over two types of cases. First, pursuant to 28 U.S.C. § 1331, this court has federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Second, pursuant to its diversity jurisdiction,[1] the court may preside over suits between citizens of different states where the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a).

For proper removal under the federal question theory, the complaint usually must state the federal question *on its face*. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (the federal question must be clear from the face of plaintiff's complaint in order for the court to have jurisdiction under 28 U.S.C. § 1331). However, a state created cause of action may be deemed to arise under federal law where: (1) the federal law completely preempts state law; (2) the claim is necessarily federal in character; or (3) the right to relief depends on the resolution of a substantial,

---

[1] In the amended petition for removal, defendants do not assert that diversity jurisdiction exists. The court, therefore, declines to analyze diversity jurisdiction. (*See* doc. # 4).

1    disputed federal question. *See Fitzgerald v. Celergy Networks, Inc.*, 67 Fed. Appx. 390, 391-92

2    (9th Cir.2003).

3    **III.    Discussion**

4          Federal district courts have exclusive jurisdiction over all cases under Title 11 of the United

5    States Code, and concurrent jurisdiction over all civil proceedings arising under Title 11, or arising

6    in or related to cases under Title 11. 28 U.S.C. § 1334(a) & (b); *see In re Harris Pine Mills*, 44

7    F.3d 1431, 1434 (9th Cir. 1995). Title 11, however, allows that "[e]ach district court may provide

8    that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or

9    related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C.

10   § 157(a); *see, e.g.*, *Carnes v. IndyMac Mortgage Servs.*, No. CIV. 10-3005 RHK SRN, 2010 WL

11   5276987, at *3 (D. Minn. Dec. 17, 2010).

12         In fact, this district has provided such a rule—Local Rule 1001. *See* LR 1001. LR

13   1001(b)(1) states that "[a]ll cases and proceedings within the bankruptcy jurisdiction of the [c]ourts

14   are referred to the bankruptcy judges." LR 1001(b)(1). Title 11 further provides that those

15   bankruptcy judges may hear any core proceedings arising under Title 11, including "allowance or

16   disallowance of claims against the estate or exemptions from property of the estate." 28 U.S.C. §§

17   157(b)(1) & (b)(2)(B). To the extent this court finds federal question jurisdiction related to a Title

18   11 federal question related to claims against the estate, it will defer to the bankruptcy judge in this

19   district and refer the case to that court.

20         In the present case, Invest Vegas has asserted two state law claims for relief in its

21   complaint. (*See* Doc. # 1 at 18). First, Invest Vegas asked the state court to determine that

22   plaintiff is the rightful owner of the subject property and that defendants have no right, title,

23   interest, or claim to the property. (*Id.*). Second, Invest Vegas asks the court to forever enjoin 21st

24   Mortgage and other defendants from asserting any estate, or any such right, title, interest, or

25   claim against the property. (*Id.*). Both claims for relief were brought pursuant to NRS 40.010.

26         Invest Vegas' complaint does not state a federal question on its face. Before ruling out

27   federal question jurisdiction though, the court must determine whether the state-created right to

28   relief depends on the resolution of a substantial, disputed federal question.

**James C. Mahan**
**U.S. District Judge**

- 4 -

1    By asking the court to resolve a dispute over property that may have been subject to an

2    automatic stay under Title 11, plaintiff is inadvertently asking the court to answer two Title 11

3    questions. First, was the subject property or a security interest secured by the subject property

4    part of the bankruptcy estate in the *Residential Capital* case? Second, if a security interest

5    secured by the subject property, but not the subject property itself, was part of the bankruptcy

6    estate, does Title 11's automatic stay prevent a more senior creditor secured by the subject

7    property from foreclosing on the debtor's security interest when doing so extinguishes that

8    interest?

9            *A.   A security interest in the subject property was part of the Residential Capital estate.*

10    The first Title 11 question is a question of fact, and does not constitute a federal question

11    for the purpose of determining subject matter jurisdiction. Nevertheless, the court must analyze

12    and determine the answer to this question in order to determine whether the latter Title 11

13    question does pose a federal question.

14    Invest Vegas asserts that the subject property was not part of the *Residential Capital*

15    estate, and moreover, that even if it was, defendant has failed to meet the burden of proof of the

16    removing party. The court agrees that the subject property was not part of the estate. 21st

17    Mortgage and its predecessors in interest to the note and deed of trust were never owners of the

18    subject property. That is not, however, what is at issue here. 21st Mortgage does not contend that

19    the subject property was part of the *Residential Capital* case—it contends that a promissory note

20    secured by a deed of trust creating a *security interest in* the subject property was part of the

21    bankruptcy estate.

22    The court finds that the note and deed of trust *were* part of the estate. Invest Vegas argues

23    that the redacted spreadsheet evidencing the inclusion of the note and deed of trust in the assets

24    of the bankruptcy sale, Schedule 2.13, is missing the customary court filing time stamp and was

25    not attached to the purchase and sale agreement referenced in the bankruptcy order. (*See* doc. #

26    11 at 2-3). It contends that, accordingly, the court cannot rely on this as proof that 21st

27    Mortgage's note and deed of trust were part of the estate.

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

1    The original purchase and sale agreement attached to defendants' response to the remand

2    motion indicates that Schedule 2.13 was not intended to be included with the agreement at the

3    date of signing, but would be provided at closing. (Doc. # 10-3 at 62). The schedule provided by

4    defendants is consistent with that provision—it features a closing date of December 31, 2012,

5    and states that the data in the table is up to date through that day. It is logical then that this would

6    not have been included with the order and agreement, dated November 21, 2012, and would lack

7    the court time stamp. It was either never filed with bankruptcy court or was filed later because it

8    didn't exist when the order and copy of the purchase and sale agreement were filed by that court.

9    This argument alone cannot invalidate the authenticity of the document.

10    The court *does* agree with Invest Vegas' argument that the schedule lacks clear identifiers

11    of its relationship to the bankruptcy case or purchase and sale agreement. Standing alone,

12    Schedule 2.13 would be impossible to authenticate as the same Schedule 2.13 referred to in the

13    purchase and sale agreement provision. Nevertheless, it does clearly identify the subject property

14    as part of "Mortgage Loan Schedule 2.13." (Doc. # 10-10 at 2-5).

15    Defendant also provided a sworn affidavit of 21st Mortgage's legal manager and staff

16    attorney, Chris Caldwell. (*See generally* Doc. # 10 at 9-12). Mr. Caldwell's statement identifies

17    the subject property by its legal and known address, and includes copies of the deed of trust and

18    the note. It then indicates that 21st Mortgage did acquire the note and deed of trust by virtue of

19    the bankruptcy sale in the *Residential Capital* case. Mr. Caldwell indicates that he has worked

20    personally with the note and deed during all phases of acquisition and servicing. Finally, he

21    confirms that the Schedule 2.13 provided by 21st Mortgage is the same Schedule 2.13 referenced

22    in the purchase and sale agreement authorized by the order in *Residential Capital*.

23    Invest Vegas next argues that because Mortgage Electronic Registration System, Inc.

24    ("MERS") did not record an assignment of the deed of trust to 21st Mortgage until 2014, two

25    years after the HOA sale, 21st could not have been the beneficiary of the deed of trust at the time

26    of that sale. For most mortgages and deeds of trust in the U.S., however, the originator records an

27    assignment to MERS as beneficiary shortly after origination. The deeds then remain assigned to

28    MERS through several purchases and sales of the underlying promissory notes and deeds.

James C. Mahan
U.S. District Judge

- 6 -

1    Assignment to MERS allows buyers and sellers of the underlying promissory notes to

2 buy and sell the notes, generally for purposes of pooling and securitization, and simply inform

3 MERS of the new ownership, avoiding unnecessary and repetitive recording. The relationship

4 between MERS as agent, the buyers of underlying promissory notes, and the sellers of

5 underlying promissory notes is governed by contract, making recording each transfer of

6 beneficiary unnecessary. Generally, MERS does not legally assign the deed back to any owner of

7 the underlying promissory note until such time as the owner needs to re-unite the deed or

8 mortgage with the promissory note in order to foreclose under state law. At this point and

9 generally only at this point, will MERS record an assignment of the deed of trust.

10    It is entirely possible then, and quite likely, that 21st Mortgage bought ownership of the

11 note at the bankruptcy sale, subject to the understanding that the respective deed of trust was

12 currently assigned to MERS. Under Nevada law, the deed of trust could not be foreclosed upon

13 until MERS recorded an assignment to 21st Mortgage, but the lack of a recording in favor of 21st

14 Mortgage previously does not necessarily mean 21st Mortgage did not purchase the right to be

15 the ultimate beneficiary of that deed. Because 21st Mortgage had decided to foreclose in 2014,

16 MERS then recorded an assignment in writing, reuniting the note and deed of trust. 21st

17 Mortgage has been the true beneficiary and owner of the complete security interest, however,

18 since the bankruptcy sale.

19    Finally, Invest Vegas argues that because no party in this case was a named party in the

20 bankruptcy case, the note and deed of trust could not have been part of the bankruptcy estate.

21 This fact is not relevant.

22    The court finds that, taken together, the affidavit of Chris Caldwell and Schedule 2.13

23 demonstrate that it is more likely true than not true that 21st Mortgage's note and deed of trust,

24 which together form a security interest in the subject property, were part of the bankruptcy estate

25 in the *Residential Capital* case.

26 . . .

27 . . .

28 . . .

James C. Mahan
U.S. District Judge

- 7 -

A.  *Whether or not the automatic stay protected 21st Mortgage's security interest from foreclosure by the HOA is a federal question.*

There is a second Title 11 question implied by plaintiff's action to quiet title in its favor. That is: did the HOA sale violate the automatic stay that was protecting 21st Mortgage's security interest in the subject property during the course of the *Residential Capital* litigation? In order to determine whether removal is proper, the court must decide whether this question is a federal question for the purpose of determining jurisdiction.

As discussed *supra*, federal district courts have exclusive jurisdiction over cases arising under Title 11, and concurrent jurisdiction over proceedings arising in or related to cases under Title 11. 28 U.S.C. § 1334(a) & (b); *see In re Harris Pine Mills* at 1434. More specifically, the determination of whether a given act, such as the HOA sale, violates the automatic stay provided by section 363 of Title 11 is firmly within the purview of federal courts. *See Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1113 (9th Cir.2005)(noting that "the power of the district court to decide whether the automatic stay applies is clear"); *see also ComUnity Collectors LLC v. Mortgage Elec. Registration Servs., Inc.*, No. C-11-4777 EMC, 2012 WL 3249509, at *3 (N.D. Cal. Aug. 7, 2012)(same); *In re Zavala*, 444 B.R. 181 (Bankr. E.D. Cal. 2011)(deciding that no violation of the automatic stay occurred as to debtors).

Here, there is no longer any factual dispute as to whether 21st mortgage's security interest in the subject property was part of the estate in the *Residential Capital* case—it was. Rather, the question is whether initiation of the HOA sale, and the subsequent completion of the HOA sale, violated the automatic stay in the *Residential Capital* case.

Typically, alleged violations of the automatic stay stem from an action by one of the debtor's creditors that is adverse to the property of the debtor's estate, such as foreclosing on a residence that is part of the bankruptcy estate. The instant facts present a much rarer alleged violation. In the *Residential Capital* case, the debtor happened to be a creditor with respect to the subject property, specifically the first mortgage lender. The property protected by the automatic stay was a security interest *in the subject property*—not the subject property itself. Therefore, when the HOA foreclosed on the subject property, it did not foreclose on property of the

1  bankruptcy estate at all. The foreclosure had the effect, however, of extinguishing a security

2  interest that *was* property of the estate. That property was a promissory note with a value of

3  greater than $200,000.00, secured by the deed of trust.

4       Section 362 of Title 11 prohibits, *inter alia*, "any act to create, perfect, or enforce any lien

5  against property of the estate." 11 U.S.C. § 362(a)(4). The HOA did not enforce a lien *against*

6  property of the debtor's estate. Nevertheless, by enforcing a senior lien against another piece of

7  property, the HOA extinguished and rendered valueless the debtor's previously valuable

8  property—a more junior lien on the subject property. In sum, it is unclear whether section

9  362(a)(4) prohibits the HOA sale.

10       Therefore, the quiet title claims may be deemed to arise under federal law because the

11  right to relief depends on the resolution of a substantial, disputed federal question. *See Fitzgerald*

12  at 391-92. Section 362(a)(4) is a federal statute. Moreover, it is part of Title 11, which is subject

13  to exclusive federal jurisdiction over cases and concurrent federal jurisdiction over core

14  proceedings, including application of the automatic stay. Therefore, resolution of a question

15  about the applicability of the stay is a federal question. Because it may invalidate the HOA sale,

16  it is also a substantial question. Because it is unclear whether the stay applies and the parties do

17  not agree about the nature of the property in the bankruptcy estate, it is disputed. Accordingly,

18  federal question jurisdiction exists.

19       Further, because it is now clear that resolution of this action constitutes a "case[] [or]

20  proceeding[] within the bankruptcy jurisdiction of the [c]ourt[]," this court will now refer the

21  case to the bankruptcy court in this district for resolution. *See* LR 1001(b)(1).

22       Accordingly,

23       IT is hereby ORDERED, ADJUDGED, AND DECREED that plaintiff Invest Vegas'

24  motion to remand to state court be, and the same hereby is, DENIED.

25       IT is further ORDERED that Case No. 2:15-cv-00644-JCM-VCF be, and the same hereby

26  is, REFERRED to the United States Bankruptcy Court for the District of Nevada.

27  . . .

28  . . .

**James C. Mahan**
**U.S. District Judge**

- 9 -

IT is further ORDERED that plaintiff's request for attorney's fees be, and the same hereby is, DENIED.

DATED October 9, 2015.

UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge